UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CLIFFORD D. DURKEE, | ) No. CV 11-6564-PLA |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 10, 2011, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 25, 2011, and August 30, 2011. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 7, 2012, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on September 27, 1960. [Administrative Record ("AR") at 48.] He has a tenth grade education, and has past relevant work experience as a bill poster and a hand collator. [AR at 40, 126, 131.]

Plaintiff filed an application for Disability Insurance Benefits on April 20, 2009, alleging that he has been unable to work since April 30, 2009,[1] due to back surgery, hypertension, and chronic lung problems. [AR at 48, 122-24, 125-32.] After his application was denied initially, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 59-63, 66.] A hearing was held on September 20, 2010, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 23-47.] A vocational expert ("VE") also testified. [AR at 39-44.] On September 24, 2010, the ALJ determined that plaintiff was not disabled. [AR at 11-19.] On June 20, 2011, the Appeals Council denied plaintiff's request for review. [AR at 1-5, 7.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

---

[1] Plaintiff initially alleged a disability onset date of January 20, 2009 [AR at 122], but amended the onset date to April 30, 2009, during his administrative hearing. [AR at 30-32.]

2

as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, App. 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the

claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. § 404.1520; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since April 30, 2009, the amended alleged onset date. [AR at 13.] At step two, the ALJ concluded that plaintiff has the following impairments that, in combination, are severe: bronchial asthma, hypertension, hypercholesterolemia, lumbar disc herniation and status post back surgery, degenerative joint disease, obesity, and obstructive pulmonary disease. [AR at 13-14.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 14.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform "light work," as defined in 20 C.F.R. § 404.1567(b),[3] with the following limitations: "[plaintiff can] stand and walk for four hours in an eight-hour workday, sit for four hours in an eight-hour workday, occasionally engage in postural activities, and ... have moderate exposure to fumes and other similar environment factors." [Id.] At step four, the ALJ determined that plaintiff was not capable of performing his past relevant work. [AR at 17.] At step five, "based on the testimony of the vocational expert," and "using the Medical-Vocational Rules as a framework[,]" the ALJ concluded that jobs exist in significant numbers in the national economy that plaintiff can perform. [AR at 18-19.] Thus, the ALJ determined that plaintiff was not

---

[2]  RFC is what a claimant can still do despite existing exertional and non-exertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]  "Light work" requires "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

4

disabled from January 20, 2009,[4] to September 24, 2010, the date of the ALJ's decision. [AR at 19.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ's determination that plaintiff can perform "alternate light work" is not supported by substantial evidence. Specifically, plaintiff argues that the ALJ was required to find plaintiff disabled based on the VE's testimony and use of the appropriate grid. [Joint Stipulation ("JS") at 3-10, 17-19.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**THE ALJ'S USE OF THE GRIDS AS A FRAMEWORK AT STEP FIVE**

Plaintiff argues that the ALJ failed to use the proper Medical-Vocational Guidelines[5] and that he meets the disability requirements of 20 C.F.R., Part 404, Subpart P, App. 2 § 201.10 ("the sedentary grid"). [JS at 18.] Thus, plaintiff asserts a finding of disabled is required. [JS at 18.] Defendant contends that the grids "provided a framework for finding Plaintiff 'not disabled,' [and] the ALJ properly used vocational expert testimony to further support his Step Five finding" and ultimate finding of non-disability. [JS at 13.]

At step five of the sequential evaluation process, the burden shifts to the Commissioner to prove that plaintiff can perform substantial work available in significant numbers in the national economy based on plaintiff's age, RFC, education, and past work experience. See Smolen v.

---

[4] As noted above, plaintiff amended his alleged disability onset date to April 30, 2009. [AR at 31-32.] While the ALJ accepted this amendment [AR at 13, 32], he nevertheless used the original disability onset date as the start date in finding plaintiff not disabled at step five of the sequential evaluation process.

[5] The Medical-Vocational Guidelines at 20 C.F.R., Part 404, Subpart P, Appendix 2 ("the grids") present, in a table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids categorize jobs by their physical-exertional requirements and present various combinations of age, education, and work experience, which are relevant to a claimant's ability to find work. Id. For each combination of these factors, the grids "direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in the category of physical-exertional requirements." Id.; see also 20 C.F.R., Part 404, Subpart P, App. 2 § 200.00(a).

Chater, 80 F.3d at 1273, 1291 (9th Cir. 1996); see also 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner (or the ALJ) may meet this burden in one of two ways: (1) by obtaining testimony from a VE; or (2) by referencing the grids. Lounsburry v. Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006). "The Commissioner's need for efficiency justifies use of the grids at step five where they *completely and accurately* represent a claimant's limitations." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (emphasis in original). If the grids do not "*completely and accurately*" represent a claimant's limitations -- as in this case, where plaintiff has both exertional and non-exertional limitations -- reliance on the grids may not be appropriate. In such a case, if the grids would result in an unfavorable outcome for plaintiff, "further evidence and analysis are required," such as a VE consultation. Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989). But if such a claimant has both exertional and non-exertional limitations and "the grids direct[] a finding of disability, that finding must be accepted by the Secretary." Id., 880 F.2d at 1157; see also 20 C.F.R. § 404.1569a(d) ("[If a claimant has] a combination of exertional and non[-]exertional limitations ... [the ALJ] will not directly apply [the grids] unless there is a rule that directs a conclusion that [claimant is] disabled based upon [his] strength limitations; otherwise the rules provide a framework to guide [the ALJ's] decision.").

The ALJ in this case concluded that plaintiff has the RFC to perform "light work" [AR at 15], which may require "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." Id. In contrast, "[j]obs are sedentary if walking and standing are required occasionally ...." 20 C.F.R. § 404.1567(a). Based on the ALJ's determination that plaintiff can stand and/or walk for only four hours of an eight-hour workday [AR at 14], plaintiff is not capable of performing a full range of light work. See, e.g., Gallant v. Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984) ("[T]he full range of light work requires standing or walking for up to two-thirds of the working day."); see also SSR 83-10, 1983 WL 31251, at *6 ("[T]he full range of light work requires standing, off and on, for a total of approximately six hours of an 8-hour workday."). As such, the exertional level dictated by the ALJ's RFC determination falls between light and sedentary. [See

6

AR at 14-15.] If a plaintiff's exertional level falls in the middle of two rules which direct opposite conclusions under the grids, i.e., "not disabled" at the higher exertional level and "disabled" at the lower exertional level, the ALJ "is required to call a vocational expert and hear testimony as to whether the claimant can perform *enough* light jobs in the national economy to warrant a finding of 'not disabled.'" Desrosiers v. Sec. of Health and Human Serv., 846 F.2d 573, 579-80 (9th Cir. 1988) (citation omitted) (emphasis in original).

If a claimant is closely approaching advanced age,[6] has a limited education, has no transferable skills,[7] and is limited to sedentary work, the ALJ must find that claimant disabled based on the sedentary grid. See 20 C.F.R. § 404.1569a(d); Cooper, 880 F.2d at 1157. However, if a claimant with identical characteristics is able to perform light work, Medical-Vocational Guideline 202.10 ("the light grid") directs a conclusion of not disabled. 20 C.F.R., Part 404, Subpart P, App. 2 § 202.10.

Here, plaintiff argues that "even though the ALJ determined that [plaintiff] has the [RFC] to perform light [work], the VE confirmed that [plaintiff] only has the ability to perform alternate sedentary occupations" [JS at 5], and thus, under Distasio v. Shalala, 47 F.3d 348 (9th Cir. 1995), the ALJ was required to consult the sedentary grid. Defendant argues that the ALJ found plaintiff capable of performing "modified or reduced light work" [JS at 12], and properly relied on the VE's testimony that jobs exist in the economy that plaintiff can perform at this exertion level. [JS at 15-17.] Thus, defendant argues, "[p]laintiff's reliance on [Distasio] is misplaced." [JS at 14 n.3.]

In Distasio, "[t]he ALJ found that [the plaintiff] was capable of light work, but with limitations." Distasio, 47 F.3d at 349. "The vocational expert testified that [the plaintiff] could only perform what she believed were sedentary jobs [and] [t]he Secretary accepted the testimony of the vocational expert without qualification." Id. Because "[t]he Secretary failed to account for the discrepancy between a finding that [the plaintiff] could perform light work and was therefore not

---

[6] Plaintiff is now 51 and thus in the "closely approaching advanced age category" (20 C.F.R. § 404.1563(d)).

[7] The ALJ did not reach "[t]ransferability of job skills," as he concluded it was "not material." [AR at 17-18.] If necessary on remand, the ALJ should address whether plaintiff has transferable skills.

disabled, [and] the [VE's] testimony establishing that, at best, [the plaintiff] could perform jobs that fell within the sedentary category," the Ninth Circuit reversed and remanded for an award of benefits. Id. at 350. The case at hand resembles Distasio. In particular, the ALJ here also found plaintiff capable of light work with limitations [AR at 14], and "accept[ed] the [VE's] testimony" without qualification. [See AR at 18.] The key question then is whether the VE in this case testified that plaintiff could only perform sedentary jobs as the VE did in Distasio.

At the hearing before the ALJ, the ALJ presented the VE with a hypothetical person with plaintiff's age, education, work experience, and all the limitations the ALJ found that plaintiff has. The ALJ then elicited the VE's testimony, in relevant part, as follows:

ALJ: Is there other work in the local or national economy which such an individual could perform?

VE: Yes, your honor, **there would be work at the sedentary level of exertion**, which the hypothetical individual described could perform. For example, the occupation cashier II, DOT code 211.462-010. **Although classified at the light level of exertion**, some positions can be performed with a sit-stand option, which would be compatible with the restrictions in your hypothetical.... **Moving now to occupations classified at the sedentary level**, the occupation, microfilming document preparer, DOT code 249.587-018, **sedentary exertion**, unskilled.... Thirdly, the occupation food and beverage order clerk. DOT code 209.567-014, **sedentary exertion**, unskilled, specific vocational preparation level two....

ALJ: Thank you. I'll propose a second hypothetical to you, which is the same as the first, except that sitting limitations would be four hours rather than six hours.

***

ALJ: Could such an individual do the three jobs you indicated above in response to the first hypothetical?

VE: The individual I've described could perform the occupation of cashier II ..., **because he could sit or stand at will**. However, [sic] would not be able to perform the occupation of microfilm and document preparer, which does require sustained sitting. However. [sic] Would be able to perform the occupation food and beverage order clerk. **While classified as sedentary,** does [sic] enable the worker to stand if he chooses so long as he continues to answer the telephone and make notes of the request of the specific food item from the customer.

ALJ: And is there another job that you could give as an example, a third for this hypothetical or not?

VE: There is not, sir.

[AR at 41-43 (emphases added).] Thereafter, plaintiff's attorney ("Atty") questioned the VE, in relevant part, as follows:

> Atty: And I just have one clarification regarding the cashier II occupation .... It's **classified as light exertion, but the occupations that you cited could be performed at the sedentary level**, did I understand correctly?
>
> VE: **That is correct. Or sedentary, or with a sit-stand option.**
>
> Atty: The sit-stand option occupations. So they **wouldn't require, for example, lifting more than 10 pounds**?
>
> VE: That is correct.
>
> Atty: And so if they have a sit-stand option, if they wanted to, they could do it the **entire day sitting down**, effectively?
>
> Atty: That is correct.

[AR at 44 (emphases added).]

It is thus not at all clear whether the subcategory of cashier II jobs falls within the light category or the sedentary category. The VE initially stated that "there would be work at the sedentary level of exertion," and proceeded to identify cashier II as a job that could be performed; but cashier II is classified as light by the Dictionary of Occupational Titles ("DOT"). See DOT 211.462-010, 1991 WL 671840. The VE then stated, "[m]oving now to occupations classified at the sedentary level," and listed occupations actually classified as sedentary by the Dictionary of Occupational Titles. [AR 41-42.] As such, although the DOT identifies the cashier II job as requiring light exertion, the VE's testimony could mean that the cashier II job would be classified as sedentary in this instance because of the VE's stated modifications. After plaintiff's attorney asked for clarification, it remained unclear whether the VE intended that the cashier II job with modifications is light or sedentary. [See AR at 44.] If the modified cashier II job would not require carrying more than 10 pounds at a time and "involves sitting," it has the characteristics of a sedentary job, not a light job. Compare § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time ...") with § 404.1567(b) ("Light work involves lighting nor more than 20 pounds at a time..."); see also Social Security Ruling[8] 83-14, 1983 WL 31254 ("The major

---

[8] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own

difference between sedentary and light work is that most light jobs -- particularly those at the unskilled level of complexity -- require a person to be standing or walking most of the workday."). The VE also stated that she could not give any additional examples of jobs the hypothetical person could perform. [AR 41-43.] In order to find that plaintiff is not disabled at the fifth step of the sequential evaluation process, the ALJ had to provide evidence that light jobs exist in significant numbers in the national economy that plaintiff can perform, given the RFC determination made by the ALJ. 20 C.F.R. § 404.1560(c)(2). If the VE only testified regarding sedentary jobs, the ALJ was required to consult the sedentary grid. Distasio, 47 F.3d at 350. The Court cannot confidently conclude that the ALJ's step five determination is supported by substantial evidence, because it was made in reliance on VE testimony that was far from clear [see AR at 19]. 20 C.F.R. § 404.1560(c)(2); Bray, 554 F.3d at 1222.

Defendant asserts that Distasio is not applicable here because "the ALJ used [the light grid] only as a framework for decision[ ]making, and sought additional vocational evidence." [JS at 14.] The Court finds this argument unconvincing. The ALJ in Distasio used the grids "only as a framework for decision[ ]making" as well. Compare Distasio, 47 F.3d at 350 ("the use of grid rule 202.14 as a framework for decision[ ]making"), with AR at 18 ("using the Medical-Vocational Rules as a framework"). Thus, Distasio cannot be distinguished on that ground.

This issue could have a decisive effect on plaintiff's disability determination. If plaintiff is found capable only of sedentary work, the grids may mandate a finding of "disabled" depending on plaintiff's age category. Compare 20 C.F.R., Part 404, Subpart P, App. 2 § 201.10 with § 201.19. In that regard, plaintiff also contends that the ALJ erred by failing to view plaintiff's case in light of his borderline age. [JS at 7.] Defendant does not address the borderline age issue in the Joint Stipulation. [See JS at 10-17, 19.]

Age must factor into the ALJ's disability determination. See 20 C.F.R. § 404.1563(a). In assessing a case, the relevant age is plaintiff's age on the date of the final ALJ decision. See Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1070-71 (9th Cir. 2010). The grids factor

---

regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

in age by putting a person into one of "three age categories: younger person (under age 50), person closely approaching advanced age (age 50-54), and person of advanced age (age 55 or older)." Id. at 1071 (citing 20 C.F.R. § 404.1563(c)-(e)).

At the hearing before the ALJ, after plaintiff stated his name, age, and birthday, the ALJ asked "[y]ou'll be 50 in a week?" [AR at 26-27.] Four days later, the ALJ in his decision stated that plaintiff was "defined as a 'younger' individual age 18-49, on the alleged disability onset date (20 CFR 404.1563)." [AR at 18.] In the decision, the ALJ did not mention that plaintiff was only three days shy of 50 as of the decision date. [AR 11-19.]

A borderline age situation exists when a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [claimant is] disabled ...." 20 C.F.R. § 404.1563(b). "[A]n ALJ is not *required* to use an older age category, even if the claimant is within a few days or a few months of reaching an older age category." Lockwood, 616 F.3d at 1071 (emphasis in original) (citations omitted). Lines must be drawn somewhere. See, e.g., Russell v. Bowen, 856 F.2d 81, 84 (9th Cir. 1998) ("[T]he distinction drawn in the regulations between 49 and 50 may be imperfect, but it is not irrational .... Lines must be drawn at some point, otherwise there would be no efficient way to utilize the Grid system.") (citation omitted). But, in a borderline age situation, the ALJ cannot apply the age categories mechanically. 20 C.F.R. § 404.1563(b); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 1035 S. Ct. 1952, 761 L. Ed. 2d 66 (1983). The ALJ is required to **consider** the borderline age situation if a claimant is closely approaching the next age category. 20 C.F.R. § 404.1563(b); see also Lockwood, 616 F.3d at 1071 ("Here, the ALJ satisfied the requirement that she *consider* whether to use the older age category.") (emphasis in original).

In order to meaningfully review the ALJ's decision, there must be some indication that the ALJ followed the Regulations. See, e.g., Sears Sav. Bank v. Fed. Sav. and Loan Ins. Corp., 775 F.2d 1028,1029 (9th Cir. 1985) ("The administrative record, however, must sufficiently provide a clue to the agency's decision[ ]making analysis for such review to be meaningful."). This includes some indication that the ALJ considered the borderline age issue if the claimant "is within a few days to a few months of reaching an older age category." 20 C.F.R. § 404.1563(b).

In <u>Lockwood</u>, the Ninth Circuit found that there was enough evidence in the ALJ's decision to conclude that the ALJ had considered the borderline age issue. <u>Lockwood</u>, 616 F.3d at 1071-72. The Ninth Circuit viewed the following evidence as sufficient to show such consideration: first, "[t]he ALJ mentioned in her decision [the plaintiff's] date of birth and found that [the plaintiff] was 54 years old and, thus, a person closely approaching advanced age on the date of the ALJ's decision." <u>Id.</u> Second, "[t]he ALJ also cited to 20 C.F.R. § 404.1563, which prohibited her from applying the age categories mechanically in a borderline situation." <u>Id.</u> at 1072. Third, "the ALJ 'evaluat[ed] the overall impact of all the factors of [the plaintiff's] case' when the ALJ relied on the testimony of a vocational expert before she found [the plaintiff] was not disabled." <u>Id.</u> (citation omitted).

Here, the ALJ's decision does not contain such persuasive evidence. First, the decision in this case does not mention plaintiff's age as of the date of the decision, but rather plaintiff's age as of his alleged disability onset date. [<u>See</u> AR at 18.] The ALJ's reference to plaintiff's age on the alleged onset date does not provide the same persuasive value as would a reference to plaintiff's age on the date of the ALJ's decision, because the former predates the latter by more than one year. See <u>Campbell v. Astrue</u>, 2011 WL 1459168, at *3-4 (E.D. Cal. Apr. 14, 2011) (distinguishing <u>Lockwood</u>, in part, because the ALJ "improperly referenced [the] Plaintiff's age at onset of disability rather than at the time of the decision"). This is especially true where, as here, plaintiff aged into a borderline age situation between his alleged disability onset date and the date of the ALJ's decision. <u>See</u>, <u>e.g.</u>, <u>MacGregor v. Astrue</u>, 2010 WL 1425594, at *10 (D. Or. Mar. 8, 2010); <u>Esquer v. Astrue</u>, 2009 WL 5218007, at *2 (S.D. Cal. Dec. 31, 2009). Plaintiff went from being well over one year away from the next age category on his alleged disability onset date, to only three days away from the next age category on the date of the ALJ's decision. See generally 20 C.F.R. § 404.1563(b) (defining borderline age as "within a few days to a few months of ... an older age category"). Second, while the ALJ in this case cited 20 C.F.R. § 404.1563, as the ALJ did in <u>Lockwood</u>, it is not clear from the record that the ALJ here intended to cite this section of the Regulations in regard to the borderline age issue. In the decision's only citation to section 404.1563, the ALJ stated "[t]he claimant was born on September 27, 1960 and was 48 years old,

which is defined as a 'younger' individual age 18-49, on the alleged disability onset date (20 CFR 404.1563)." [AR at 18.] In this context, it appears that the ALJ cited section 404.1563 solely for the definition of a "younger person" (under age 50), which is found in subsection (c). See 20 C.F.R. § 404.1563(c). Although the borderline age issue is also discussed in section 404.1563, that discussion is in subsection (b). See 20 C.F.R. § 404.1563(b). Thus, it is not clear from the ALJ's citation to section 404.1563 that he considered the borderline age situation. Third, it is not clear that the ALJ here "'evaluat[ed] the overall impact of all the factors of [plaintiff's] case' when the ALJ relied on the testimony of a vocational expert before [he] found [plaintiff] was not disabled." See Lockwood, 616 F.3d at 1072 (quoting 20 C.F.R. § 404.1563(b)). Lockwood is not explicit as to the issue of how the ALJ's reliance on the VE's testimony in that case showed that the ALJ considered the borderline age issue. See id. In any event, as the VE here did not mention plaintiff's borderline age in her testimony, it is not apparent that the VE used it as a factor in her assessment of a hypothetical person with plaintiff's characteristics and limitations. [See AR 40-45.] Therefore, this Court cannot conclude that the ALJ's reliance on the VE's testimony indicates that the ALJ "'evaluat[ed] the overall impact of **all** the factors of [plaintiff's] case,'" including plaintiff's borderline age. See Lockwood, 616 F.3d at 1072 (emphasis added).

Remand is appropriate, as it is not clear whether the VE testified to any light jobs plaintiff can perform, and as it is not apparent that the ALJ considered plaintiff's borderline age[9] in making his decision, as required by 20 C.F.R. § 404.1563(b). Without any clear indication in the decision that plaintiff can perform light jobs or that the ALJ contemplated plaintiff's borderline age, there is not substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled. See Moncada, 60 F.3d at 523. On remand, the VE should clarify whether the modified version of cashier II in her testimony is sedentary or light work.

/

---

[9] See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1229 n.9 (9th Cir. 2009) ("Because [the plaintiff] is now [in the older age category], the issue of which age category [he] should be placed in is moot, *i.e.*, [his] age category is no longer a borderline case (although the ALJ should determine whether [the plaintiff] became disabled before turning [50])."); Moore v. Apfel, 216 F.3d 864, 868 (9th Cir. 2000) (noting with approval that the ALJ adjusted the plaintiff's age category on remand as the plaintiff had moved into another age group).

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to clarify the vocational expert's testimony regarding cashier II jobs, and to address plaintiff's age category. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 2, 2012

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE